## THE JOHN J. HOWLETT.

### THE ADMIRALEN.

### (District Court, E. D. Pennsylvania. April 16, 1919.)

### No. 2.

1. SALVAGE ☞26—JUDICIAL MEASUREMENT—FACTORS TO BE CONSIDERED.

The compensation for salvage is influenced by many factors, the risk incurred, the imminence of the danger, and what is saved to the owners, as well as the labor involved and the presence or absence of other promise of assistance.

2. SALVAGE ☞31—EXTINGUISHMENT OF FIRE—GOVERNING ELEMENTS.

Where a steamer laden with oil caught fire, and the crew of a steam tug promptly went to its assistance with a hose, and fought the fire without aid for 10 or 20 minutes, until other help came, and it was extinguished with little damage, the tug is entitled to salvage; the elements tending to augment the amount being the alertness of the crew of the tug

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

in discovering the fire, their promptness in responding, and the risk they faced, while the elements tending to lessen the amount are the comparative triviality of the fire and the little damage done.

In Admiralty. Libel by M. P. Howlett, owner of the steam tug John J. Howlett, against the Norwegian steamship Admiralen and cargo. Hearing on libel, answer, and proofs. Finding for libelant.

Otto Wolff, Jr., and John F. Lewis, both of Philadelphia, Pa., for libelant.

Howard H. Yocum, of Philadelphia, Pa., for respondent.

DICKINSON, District Judge. [1] The admiralty doctrine of salvage is regarded from the standpoint of the vessel owner, as a concession to the spirit of the time when a ship in distress was looked upon as the lawful prize of all who might plunder her. From the viewpoint of the advocates and supporters of the doctrine, it springs from the sense of justice, which would grant compensation to the salvors out of that which their efforts have saved from destruction, and from the policy of the law, which would second the impulse of humanity by rewarding prompt and successful efforts to rescue lives and property from threatened danger. Such a rescue evokes the gratitude of the one saved and a spirit of liberality in rewarding the rescuer. The measure of compensation, when it is to be judicially determined, is influenced by many factors, among which is the risk incurred by the salvors, the imminence of the danger which is averted, and what is saved to the owners, as well as the labor which is involved. The results in loss actually incurred may indicate little risk to the salvors, and the smallness of the danger averted, or it may be a tribute to the promptness and efficiency of the rescuers, and justify a liberal estimate of salvage.

Another feature of importance is the presence or absence of other promise of assistance than that rendered. Many of the elements which enter into an award of salvage compensation or allowance are difficult of admeasurement.

The services rendered in the present case were at a fire. In any fire, when uncontrolled, there is always danger, and, when beyond control, there is certain destruction of whatever there is to be destroyed. When it is on a vessel, and is near oil or other highly inflammable material, and the vessel is loaded with oil (as was the case here), the risk of rendering assistance and the threat of destruction is increased. When other and effective aid (as was again the case here) is close at hand, this threat is less menacing. Perhaps the most helpful guide to what might have happened is, not so much what did happen, as what was done by the salvors and others to do what was done to put out the fire and to avert the spread of the flames. This gives us something of the measure which the actors at the time applied to the situation.

[2] Applying this test, what the libelant did was to appreciate at once the need for assistance, to go promptly to the rescue, to supply a hose, which was carried aboard the respondent vessel, to pump water, which it is claimed by the libelant actually was, and which admittedly was, ready to be played upon the fire, and to stand by until the

fire was out. The whole time which elapsed from the discovery of the fire until the pump was stopped was upwards of half an hour. From the time the hose was on board the Admiralen to the coming of aid other than that afforded by this hose and the means of fighting the fire, which the crew commanded, was a matter of from 10 to 20 minutes. Just what part the hose played in the actual control of the fire and the extent of the damage thereby averted cannot, with any definiteness, be determined. The actual damage done was slight.

There is nothing in this recital to warrant a finding that there was much of a fire, much danger incurred in going to the rescue, much of a service rendered by the libelant, or much accomplished in results by the efforts made. On the other hand, however, the crew of the libelant is to be commended for their alertness in discovering the fire, for the promptness with which they responded to the at least probable need for assistance, and for facing the risk of incurring a more than possible danger.

We submit herewith, in compliance with the requirement of the statute, specific findings of fact, and an award of salvage by way of compensation for services rendered by which the whole story is disclosed. These findings make any extended discussion of the facts unnecessary.

The conclusion is (in which the respondent concurs) that there should be an award of salvage. This further comment we feel is invited. Had there been an earlier recognition of the claim of the libelant to something, the need of litigation would probably have been avoided by the parties agreeing upon a sum much less than that now awarded. This belongs to the class of cases to which the proverb which enforces the wisdom, as well as the duty, of agreement with the adversary, has application. The failure to invite such agreement (as compensation is allowed) justified, if it did not compel, the filing of the libel. The continued failure to agree after the libel was filed was due to each of the parties mistaking the attitude of the other. This misunderstanding has not yet been removed, and its presence was manifested at the trial and was reflected in the discussion of the merits of the case. The libel demanded a large sum of the respondents. The award now made carries the finding of the justification of the respondent in resisting this demand. The character of the answer, however, put the libelant to the expense and trouble of making formal proofs of averments of fact which were not in any real sense in controversy.

There is, on the other hand, some basis for the defense which is made of the sweeping denials of the answer. This is that the denials were directed, not to the averments of the libel, which founded a claim to salvage compensation, but to the averments which founded the claim made to the large sum of salvage which was demanded.

This feature of the libel, embodying, as it did, very sweeping demands, may have justified as to this feature denials equally sweeping, if the answer had been accompanied with an avowal of the attitude which was displayed at the close of the trial. The denial of all right in the libelant to compensation was not, however, justified, and the avowal of a willingness to make compensation came too late to enable the respondent to avail itself of any complaint of exaggerated demand

on the part of the libelant. The parties must in consequence stand or fall by the result of the finding made, and the finding that the libelant is entitled to something is reflected in the sum awarded, and in the disposition made of the costs.